No. 2031

Second Circuit

---

RIDGEWAY  v.  GRAYSON

---

(May 7, 1926, Opinion and Decree)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Master and Servant —Par. 160 (a), 160 (j).**

Under the Employer's Liability Act No. 20 of 1914 where special defense is that the injured employee was intoxicated at the time of the accident, the burden of proof is on the defendant to prove that defense.

2. **Louisiana Digest—Master and Servant Par. 160 (j).**

Where the testimony of the plaintiff, an injured employee suing for compensation under the Employer's Liability Act No. 20 of 1914, is not in conflict

with itself, there is no proven physical fact which would disprove it, and it is not impossible, it must be considered true.

Appeal from the Second Judicial District Court of Louisiana, Parish of Webster, Hon. Robert Roberts, Jr., Judge.

Action by Richard F. Ridgeway against C. H. Grayson for compensation. There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Kay and Plauche, of Lake Charles, attorneys for plaintiff, appellee.

Thomas W. Robertson, Wilkinson, Lewis and Wilkinson, of Shreveport, attorneys for defendant, appellant.

## STATEMENT OF THE CASE

WEBB, J. This is an action under the Employer's Liability Act, in which the plaintiff recovered judgment in the district court for the sum of three thousand three hundred and eighty dollars, payable in three hundred weeks, beginning October 17, 1920, in equal installments of twelve and 50-100 dollars, with six per cent interest on each installment from maturity until paid, and all costs of suit.

The defendant appealed.

## OPINION

The defense set up was that the injuries received by plaintiff were caused by his intoxication, and this is the sole ground which the defendant urges for the reversal of the judgment.

Ordinarily in cases which have been determined by the trial court solely upon questions of fact, we are warranted in affirming the judgment when it does not appear from the record to have been erroneous, especially when the testimony of the witnesses cannot be reconciled, as is the case presented by the transcript; but, in view of the fact that the testimony of the witnesses in this case was taken out of the presence of the court, it is urged that we should consider the testimony and weigh it, without regard to the judgment of the trial court.

In this we cannot wholly concur, as the trial court may ordinarily be presumed to have had knowledge of the antecedents of witnesses, their age, their experience, and other matters which may affect the weight to be given to their testimony, with relation to which the transcript may be silent, and in considering the testimony even in cases where the evidence was not taken in the presence of the court, we are of the opinion that we would not be warranted in disregarding the findings of fact of the trial court, where such findings are expressed or must be necessarily inferred from the judgment.

The scene of the accident was at a saw mill plant in the Parish of Webster and the evidence shows that among the buildings and appurtenances constituting the plant, there were a saw mill, planing mill, pumping station, and water trough, dolley way, and boarding house which are mentioned in the testimony.

The evidence indicates that the saw mill, was a one-story structure, the floor of which, however, was above the ground a distance of approximately seventeen feet, on which the machinery used in sawing

the logs into lumber was placed, and underneath the floor the boilers were located; nearby the boilers was a pile of sawdust and there were steps leading from the ground, where the boilers were placed, to the floor above. On one side of the saw mill, level with the floor, there was a platform the dimensions of which are not stated, and leading off from, connected with and at the same height above the ground (approximately seventeen feet) there was a dolley-way or platform about fourteen feet in width which extended in a direct line to the planing mill in which there was a boiler.

Near the saw mill there was located a pumping station and at a short distance from the pumping station a water trough and corral in which the animals used at the mill were penned.

In support of the defense E. R. Rolland, who was in the employ of the defendant as team-foreman, at the time of the accident, but who was not working for defendant at the time he testified, gave the following version of the incidents leading up to and following the accident.

He said that he had gone to the water trough about 11 o'clock p. m. and met plaintiff near the pump house; that plaintiff had been drinking and invited him to drink; that he accepted the invitation; that plaintiff had two pop bottles of moonshine whiskey hid in the sawdust pile; which was consumed by them in the course of the hours; that plaintiff became intoxicated to such an extent that he "staggered" when walking and that while they were walking on the tramway from the sawmill towards the planing mill the plaintiff "staggered" and in staggering fell from the platform to the ground. That after plaintiff fell he, witness, went through the sawmill and down the steps to the ground and thence to where the plaintiff was lying.

He states that plaintiff was unconscious and after some time he was able to get him up and assisted him to reach the planing mill where he could lay down, and thence carried him to witness' room and notified Grayson, the owner of the mill, of the accident.

Plaintiff, who says that he was employed as fireman and night watchman, his duties being to take care of the boilers and to fill the water-trough, for the mules, denies the statement of Rolland as to drinking with him or that he had seen Rolland at any time during the hours of the night preceding the accident. He gave the following version of the incidents leading up to and following the accident:

He said that while making his rounds, when going from the sawmill to the planing mill, at a point on the sawmill platform, the string on his left shoe hung, causing him to stumble, and, in stumbling, he fell off the dolley-way near the point where it joined the sawmill platform; that the fall rendered him unconscious for a period which he assumed was twenty-five minutes; that when he regained consciousness he went to the sawmill and pump house, thence to the planing mill where he first ascertained that his arm was broken, thence to the house where Rolland slept, whom he awakened, and by whom he was taken in, and that Rolland then went and notified Grayson. The plaintiff estimated that the time elapsing between the time of his fall and the time he called Rolland was fifty minutes.

The defendant in substance argues that the version of Rolland is the most satis-

factory, in that the mind may rest after the acceptance of his version, while to accept the version of the plaintiff speculation must continue as to the manner in which the shoestring could have been hung so as to cause the plaintiff to stumble.

While this may be true, yet we do not think that the credibility of witnesses may be tested in that way; the testimony of the plaintiff is not in conflict with itself; there is no admitted or proven physical fact which conflicts with his testimony or which supports Rolland's and while it may be the incident related by plaintiff is unusual, yet it does not appear as impossible.

Considering the testimony of these witnesses alone, we do not find anything which would entitle the testimony of the one to be preferred to that of the other; Rolland, it is true, is not interested but it is shown that he kept to himself the knowledge which he claims to have had of the accident, where the ordinary person, under like circumstances, would have spoken of it, and while the plaintiff did very soon after the accident sign an instrument exonerating the defendant from fault, which it is argued supports the testimony of Rolland, yet it must be conceded that if the facts recited in the instrument be accepted as true, the plaintiff would be entitled to recover under the law.

The defendant contends that the evidence of Grayson and Dr. Fuller, who were with plaintiff immediately after the accident, corroborates the statement of Rolland that plaintiff had been drinking.

The testimony of Mr. Grayson as to this:

"Q. Did he (plaintiff) have the appearance of being drunk at the time you saw him? Smell whiskey?

"A. Well, he naturally had an odor— I could not say that I smelled whiskey— it smelt like whiskey.

"Q. You don't know what it was?

"A. No, sir.

"Q. Would you say that you smelled whiskey?

"A. I did not say that I did or did not, but he had an odor."

Doctor Fuller stated that he was of the opinion that plaintiff had been drinking by reason of the chloroform not taking immediate effect, and that he detected an odor as if the plaintiff had been vomiting.

Mr. Grayson is shown to have had the plaintiff sign an instrument purporting to release him from liability a short time after he came from under the influence of the chloroform which had been given him by Dr. Fuller at the time he attended plaintiff, which was soon after the accident, and no doubt had Mr. Grayson been strongly impressed that plaintiff had been drinking he would have mentioned it in the release which was written by him.

The testimony of Mr. Grayson as well as that of Dr. Fuller as to the odor which the plaintiff had about him at the time he was treated by Dr. Fuller, indicates that very slight if any impression was made upon them at that time, as to whether or not the odor was that of whiskey. Plaintiff's manner did not indicate that he was under he influence of intoxicants and the testimony of these witnesses furnishes very slight corroboration of the testimony of Rolland.

The plaintiff offered the testimony of two witnesses who had known him for a

long time, showing that they had never known of his drinking, and while such testimony would be of little weight to prove that the plaintiff never drank, it does show that he was not addicted to the use of intoxicants, and the evidence indicating that the defendant prohibited the use of intoxicants by his employees, we are of the opinion that such evidence is entitled to consideration and to be weighed against the equivocal testimony of Mr. Grayson and Dr. Fuller as to the peculiar odor about the plaintiff, who was at that time in the room of another.

The defendant bore the burden of proof to establish that the plaintiff had been drinking, and that his injury was the result of his being intoxicated, and we are of the opinion that the preponderance of the evidence does not establish the defence.

The judgment is affirmed.